**STATE v. DAVIS**

[223 N.C. App. 296 (2012)]

———————————

STATE OF NORTH CAROLINA v. CLEO PATRICK DAVIS, JR., Defendant

No. COA11-1526

(Filed 6 November 2012)

## 1. Indictment and Information—variance with evidence at trial—not fatal—trafficking in opium and opium derivative

There was not a fatal variance between the indictment and the evidence at trial where the indictment alleged trafficking in opium pursuant to N.C.G.S. § 90-95(h)(4) and the evidence involved oxycodone, an opium derivative. The statute specifies that possession or transportation of an opium derivative is trafficking in opium or heroin.

**2. Drugs—contents of seized pills—testimony specific**

There was no error in the admission of a special agent's testimony about the contents of pills seized from defendant where the special agent performed a chemical analysis of the pills and her testimony complied with *State v. Ward*, 364 N.C. 133.

**3. Drugs—instructions—mixture instead of derivative—no plain error**

There was no plain error in a prosecution for trafficking in oxycodone where the trial court instructed the jury on possession of opium or an opium mixture rather than an opium derivative. Defendant did not dispute that he had the pills in his possession, defendant gave a signed statement that he intended to sell those pills and split the money with his mother, a special agent testified both that the pills contained oxycodone and that oxycodone is an opium derivative, and defendant could not show that the jury probably would have reached a different verdict with a correct instruction.

Appeal by defendant from judgment entered 2 June 2011 by Judge Thomas H. Lock in Columbus County Superior Court. Heard in the Court of Appeals 10 May 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Jonathan D. Shaw, for the State.*

*William D. Spence for defendant-appellant.*

GEER, Judge.

Defendant Cleo Patrick Davis, Jr. appeals from his convictions of trafficking in opium by transportation and trafficking in opium by possession. Defendant primarily contends on appeal that there was a fatal variance between the indictment and the proof offered at trial. Defendant points out that the indictment alleged that he trafficked in opium, while the evidence showed that the substance was an opium derivative. Based on the plain language of the statute, we hold that no fatal variance occurred.

Facts

The State's evidence tended to show the following facts. At about 3:00 p.m. on 20 March 2009, Deputy Brett Sasser of the Brunswick County Sheriff's Department pulled over defendant for driving with-

out a seat belt. Deputy Sasser asked defendant for his driver's license and for consent to search his vehicle. After defendant consented to the search, Deputy Sasser found a small amount of marijuana in the center console. Deputy Sasser then obtained defendant's consent to search his person and found a prescription bottle containing 29 Percocet tablets in defendant's left front coat pocket.

Defendant told Deputy Sasser that he was picking up the pills for his mother. At Deputy Sasser's request, a fellow officer called the pharmacy and learned that defendant's mother had picked up the pills a few days earlier. Deputy Sasser then placed defendant under arrest. After arriving at the police station, Deputy Sasser interviewed defendant, and defendant told Deputy Sasser that his intention was to sell the pills and split the money with his mother.

Defendant was charged with trafficking in opium or heroin by transportation and by possession pursuant to N.C. Gen. Stat. § 90-95(h)(4). At trial, Special Agent Alisha Matkowsky testified that the pills contained oxycodone, a derivative of opium. The jury convicted defendant of trafficking in opium both by possession and by transportation. The trial court sentenced defendant to a term of 90 to 117 months imprisonment. Defendant timely appealed to this Court.

## Discussion

[1] Defendant first argues that the trial court erred in denying his motion to dismiss the charges because there was a fatal variance between the indictment and the State's trial evidence. Specifically, defendant contends that the indictment alleged that he trafficked in "opium," while the State presented evidence that defendant was trafficking in oxycodone, an opium derivative.

The State points out that defendant did not make this argument at trial. Our Supreme Court has previously held that a defendant's motion to dismiss based on the sufficiency of the evidence is not sufficient to preserve for appellate review an argument that the evidence varied from the indictment. *See State v. Pickens*, 346 N.C. 628, 645, 488 S.E.2d 162, 172 (1997) ("Regarding the alleged variance between the indictment and the evidence at trial, defendant based his motions at trial solely on the ground of insufficient evidence and thus has failed to preserve this argument for appellate review."). However, even assuming, without deciding, that defendant's counsel did present this issue for appellate review, defendant has failed to show any fatal variance.

The Supreme Court has held that " '[a] motion to dismiss [for a variance] is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged. A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged.' " *Id.* at 646, 488 S.E.2d at 172 (quoting *State v. Waddell,* 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971)).

It is well established that "the identity of the controlled substance that defendant allegedly possessed is considered to be an essential element which must be alleged properly in the indictment." *State v. Ahmadi-Turshizi,* 175 N.C. App. 783, 784-85, 625 S.E.2d 604, 605 (2006) (holding that indictment was *facially* invalid when it failed to identify controlled substance by name specified in statute). Defendant was, however, charged under N.C. Gen. Stat. § 90-95(h)(4) (2011), which provides that "[a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, *or any salt, compound, derivative, or preparation of opium* or opiate (except apomorphine, nalbuphine, analoxone and naltrexone and their respective salts), including heroin, or any mixture containing such substance, shall be guilty of a felony *which felony shall be known as 'trafficking in opium or heroin'* . . . ." (Emphasis added.)

Thus, the plain language of the statute does not create a separate crime of possession or transportation of an opium derivative, but rather specifies that possession or transportation of an opium derivative is trafficking in opium or heroin, precisely as alleged in the indictment. Based on the statutory language, defendant has shown no fatal variance between the indictment and the evidence. At trial, the State presented evidence that defendant committed the precise crime that was charged.

[2] Defendant next argues that the trial court erred in admitting the testimony of Special Agent Matkowsky that the pills possessed by defendant were oxycodone. Our Supreme Court held in *State v. Ward,* 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010), that "[u]nless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required." In *Ward,* the Court concluded that the trial court should have excluded an agent's identification of prescription drugs based solely on comparing the outward appearance of the tablets and their markings with literature identifying pharmaceutical markings. *Id.* at 148, 694 S.E.2d at 747-48.

Here, however, Special Agent Matkowsky did perform a chemical analysis of the pills. Her testimony explained the technique she used to isolate the components of the pills, including running the material through an "instrument" that generated a graphic printout of the chemical make-up of the components, which she could then compare to known graphs of the components and identify the substances in the pills. Special Agent Matkowsky's testimony complied with *Ward* and, therefore, the trial court properly admitted her testimony.

**[3]** Finally, defendant argues that the trial court committed plain error when the evidence showed that defendant possessed an opium derivative, but the trial court instructed the jury that it could convict defendant if it found "that the defendant knowingly possessed Opium *or any mixture* containing such substance." (Emphasis added.) As our Supreme Court has observed:

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citations and quotation marks omitted).

Even assuming that the trial court erred in giving the "mixture" instruction, defendant has not shown that in the absence of the error, the jury would probably have reached a different verdict. In this case, defendant does not dispute that he had the pills at issue in his possession. Defendant also gave a signed statement that he intended to sell those pills and split the money with his mother. Special Agent Matkowsky testified both that the pills contained oxycodone and that oxycodone is an opium derivative. Consequently, defendant cannot show that the jury probably would have reached a different verdict if the trial court had referred in its instructions to an opium derivative rather than a mixture. We, therefore, hold that defendant received a trial free from prejudicial error.

No error.

Judges ELMORE and THIGPEN concur.