*882 DAVIS, Judge.
*362 Teon Jamell Williams ("Defendant") appeals from his convictions for two counts of possession with intent to manufacture, sell, or deliver ("PWIMSD") a Schedule I substance, one count of maintaining a dwelling for the purpose of keeping or selling a controlled substance, and having attained the status of an habitual felon. On appeal, he argues that the trial court erred in (1) allowing the State to amend one count of its indictment charging Defendant with PWIMSD; (2) entering judgment on the two counts of PWIMSD because the indictment, even as amended, was fatally defective such that the trial court lacked subject matter jurisdiction; (3) denying his motion to dismiss one of the counts of PWIMSD; and (4) denying his motion to dismiss the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance. After careful review, we find no error in part and vacate in part.
Factual Background
The State presented evidence at trial tending to establish the following facts: In the spring of 2013, Defendant and Laura Morrison ("Morrison") were living together in a mobile home on Oak Knoll Drive in Iredell County, North Carolina with Morrison's children. Both Defendant and Morrison were on supervised probation at the time, and Morrison's probation officer, Randy McDaniel ("McDaniel"), arranged to conduct a search of the residence pursuant to a condition of Morrison's probation that she submit to warrantless searches of her person, property, vehicle, or residence conducted by a probation officer at reasonable times. McDaniel proceeded to contact Defendant's probation officer, Alex Cashion ("Cashion"), to inform her of his intention to perform a search of the residence.
On 1 May 2013 at approximately 12:30 p.m., McDaniel and Cashion arrived at the Oak Knoll Drive residence to conduct the search. Defendant answered the door and informed the officers that he was alone in the home. Cashion told Defendant of their intention to search the residence, and Defendant consented to the search. Investigator Tenita Huffman ("Investigator Huffman") of the Statesville Police Department arrived at the residence shortly thereafter to assist McDaniel and Cashion in executing the search.
*363 The Oak Knoll Drive residence had two bedrooms with Morrison and Defendant occupying the left bedroom and Morrison's children using the right bedroom. Investigator Huffman searched the left bedroom and observed that the closet within the bedroom contained both men's and women's clothing. She examined the articles of men's clothing hanging on the lower rack of the closet and proceeded to search through the pockets of approximately 20 pairs of pants. In the pocket of a pair of gray sweatpants, Investigator Huffman felt " a round ball" containing a "soft substance." When she removed the item from the pants pocket, she saw that it was a plastic bag that contained a white substance. She also observed that there were numerous plastic corner baggies[1] within the larger bag.
Because the Oak Knoll Drive residence did not lie within the Statesville city limits, the Iredell County Sheriff's Office was notified so that deputy sheriffs could come to the residence for the purpose of arresting Defendant. Deputies from the Sheriff's Office arrived at the residence and continued the search of the home. In addition to the plastic bag containing the white substance and corner baggies, officers also discovered a set of digital scales and $460.00 in cash concealed in a Bible placed on top of a dresser in the left bedroom.
The white substance in the plastic bag was sent to the crime laboratory within the Sheriff's Office for testing. Misty Icard ("Icard"), a forensic drug chemist and the director of the crime laboratory, performed a series of tests on the substance to determine its properties. Icard concluded from the results of the tests that the substance "contained 4-methylethcathinone and methylone which are controlled substances also known as bath salts."
*883 On 1 July 2013, a grand jury indicted Defendant on two counts of PWIMSD a Schedule I controlled substance, listing "Methylethcathinone" in Count One and "Methylone" in Count Two as the Schedule I substances Defendant possessed. The grand jury also issued bills of indictment charging Defendant with maintaining a dwelling to keep or sell controlled substances and with having attained habitual felon status. On 19 December 2013, the trial court granted the State's motion to amend the PWIMSD indictment to add the numerical prefix "4-" to Count One of the indictment, thereby alleging that Defendant possessed *364 "4-Methylethcathinone" (instead of "Methylethcathinone" as Count One of the indictment had originally alleged).
A jury trial was held beginning on 8 January 2014 in Iredell County Superior Court before the Honorable Julia Lynn Gullett. The jury found Defendant guilty of all charges, and the trial court entered judgment on the jury's verdicts. Defendant was sentenced to two consecutive terms of 90 to 120 months imprisonment. Defendant gave notice of appeal in open court.
Analysis
I. Indictment for PWIMSD Charges
Defendant raises two distinct challenges to the indictment for the PWIMSD charges. First, he asserts that the trial court erred in permitting the State to amend the indictment for Count One of the PWIMSD charge. Second, he contends that notwithstanding the amendment, the indictment for both Count One and Count Two remained fatally defective. We address each of these arguments in turn.
A. Amendment of Indictment as to Count One
Defendant's first argument is that the trial court erred by permitting the State to amend Count One of the indictment charging him with PWIMSD by changing the substance Defendant allegedly possessed from "Methylethcathinone" to "4 -Methylethcathinone." (Emphasis added.)
It is well established that "[a] felony conviction must be supported by a valid indictment which sets forth each essential element of the crime charged." State v. LePage, 204 N.C.App. 37, 49, 693 S.E.2d 157, 165 (2010). An indictment that "fails to state some essential and necessary element of the offense" is fatally defective, State v. Wilson, 128 N.C.App. 688, 691, 497 S.E.2d 416, 419 (citation and quotation marks omitted), disc. review improvidently allowed, 349 N.C. 289, 507 S.E.2d 38 (1998), and if the indictment at issue is fatally defective, the superior court lacks subject matter jurisdiction over the case, State v. Justice, 219 N.C.App. 642, 643, 723 S.E.2d 798, 800 (2012).
N.C. Gen.Stat. § 15A-923 provides that "[a] bill of indictment may not be amended." N.C. Gen.Stat. § 15A-923(e) (2013). "Our Supreme Court has interpreted the term 'amendment' under N.C.G.S. § 15A-923(e) to mean any change in the indictment which would substantially alter the charge set forth in the indictment." State v. De la Sancha Cobos, 211 N.C.App. 536, 541, 711 S.E.2d 464, 468 (2011) (citation and quotation marks omitted). "In determining whether an amendment is a substantial *365 alteration, we must consider the multiple purposes served by indictments, the primary one being to enable the accused to prepare for trial." State v. Silas, 360 N.C. 377, 380, 627 S.E.2d 604, 606 (2006) (citation and quotation marks omitted).
This Court has held that (1) amending an indictment to add an essential element to the allegations contained therein constitutes a substantial alteration and is therefore impermissible, see De la Sancha Cobos, 211 N.C.App. at 541, 711 S.E.2d at 468 ; while (2) an amendment that simply corrects an error unconnected and extraneous to the allegations of the essential elements of the offense is not a substantial alteration and is permitted, see State v. White, 202 N.C.App. 524, 529, 689 S.E.2d 595, 598 (2010) (explaining that amendment to nonessential language in indictment did not fundamentally alter nature of charge asserted because "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage" (citation and quotation marks omitted)).
*884 In order to address Defendant's argument, it is necessary to understand the statutory framework classifying controlled substances and setting out the penalties for manufacturing, selling, delivering, and possessing such substances. The North Carolina Controlled Substances Act lists and categorizes various drugs, substances, and immediate precursors into six schedules. N.C. Gen.Stat. § 90-87(5) (2013). N.C. Gen.Stat. § 90-95 provides that possession of a Schedule I substance with the intent to manufacture, sell, or deliver is a Class H felony. N.C. Gen.Stat. § 90-95(a)(1), (b)(1) (2013).
Substances classified under Schedule I-the schedule relevant to Defendant's convictions for PWIMSD-are listed in N.C. Gen.Stat. § 90-89. Schedule I substances have been deemed to require the highest level of state regulation and have "a high potential for abuse, no currently accepted medical use in the United States, or a lack of accepted safety for use in treatment under medical supervision." N.C. Gen.Stat. § 90-89 (2013). Schedule I lists various opiates, opium derivatives, hallucinogens, depressants, and stimulants by their chemical and trade names. Among the Schedule I stimulants are cathinones, a class of drugs that have a base chemical structure of 2-amino-1-phenyl-1-propanone. N.C. Gen.Stat. § 90-89(5)(b). In light of the multitude of ways in which a synthetic, or man-made, cathinone can be derived and modified from this base structure, N.C. Gen.Stat. § 90-89(5) also includes a "catch-all" provision in subsection (j) of the statute, which encompasses-and classifies as Schedule I substances-the universe of substances that are formed through the following variations on the cathinone base structure:
*366 A compound, other than bupropion, that is structurally derived from 2-amino-1-phenyl-1-propanone by modification in any of the following ways: (i) by substitution in the phenyl ring to any extent with alkyl, alkoxy, alkylenedioxy, haloalkyl, or halide substituents, whether or not further substituted in the phenyl ring by one or more other univalent substituents; (ii) by substitution at the 3-position with an alkyl substituent; or (iii) by substitution at the nitrogen atom with alkyl or diakyl groups or by inclusion of the nitrogen atom in a cyclic structure.
N.C. Gen.Stat. § 90-89(5)(j).
Thus, pursuant to this statutory provision, compounds that are both (1) derived from the base structure of a cathinone; and (2) chemically modified in one of the three statutorily-defined ways, fall within Schedule I of the Controlled Substances Act. See id. Such synthetic compounds are commonly referred to as "bath salts," and according to the testimony of Icard, the State's expert witness at trial, 4-methylethcathinone and methylone are two examples of substances falling into this category.
Our caselaw establishes that "[w]hen a defendant has been charged with possession of a controlled substance, the identity of the controlled substance that defendant allegedly possessed is considered to be an essential element which must be alleged properly in the indictment." State v. Ahmadi-Turshizi, 175 N.C.App. 783, 784-85, 625 S.E.2d 604, 605, disc. review denied, 360 N.C. 484, 631 S.E.2d 133 (2006). In Ahmadi-Turshizi, the defendant was charged with various drug offenses by means of indictments that "identified the controlled substance that he allegedly possessed, sold and delivered as 'methylenedioxymethamphetamine a controlled substance which is included in Schedule I of the North Carolina Controlled Substances Act.' " Id. at 785, 625 S.E.2d at 605. We held that the indictments were defective because they omitted the numerical prefix from the chemical name of the substance possessed by the defendant. Id. at 786, 625 S.E.2d at 606.
Defendant's indictment listed the controlled substance he allegedly possessed, sold, and delivered to be "methylenedioxymethamphetamine" but failed to include "3, 4" as required. Schedule I does not include any substance which contains any quantity of "methylenedioxymethamphetamine." As the substance listed in defendant's indictment does not appear in Schedule I of our Controlled Substances Act, the indictment is fatally flawed and each *367 of defendant's convictions for felonious possession of methylenedioxymethamphetamine, *885 with the intent to sell and deliver, sale of methylenedioxymethamphetamine, and delivery of methylenedioxymethamphetamine, must be vacated.
Id. at 786, 625 S.E.2d at 605-06.
In so holding, we relied upon State v. Ledwell, 171 N.C.App. 328, 614 S.E.2d 412, disc. review denied, 360 N.C. 73, 622 S.E.2d 624 (2005), in which this Court similarly vacated the defendant's conviction of a possessory offense because the indictment did not include the numerical prefix of the controlled substance and thus did not correspond with the substance as listed in the Controlled Substances Act. We concluded that the omission of the numerical prefix was a defect that could not be regarded as a "mere technicality, for the chemical and legal definition of these substances is itself technical and requires precision." Id. at 332, 614 S.E.2d at 415 (citation and quotation marks omitted). Therefore, because the substance described in the defendant's indictment was not a Schedule I controlled substance, we held that the indictment charging the defendant with possession of a Schedule I controlled substance was fatally defective. Id. at 333, 614 S.E.2d at 415.
The State attempts to distinguish the present case from Ledwell and Ahmadi-Turshizi on essentially two grounds. First, the State notes that unlike in those cases, the controlled substance at issue here is not specifically listed by name in Schedule I of the Controlled Substances Act. Rather, 4-methylethcathinone-the substance that forms the basis of Count One of Defendant's indictment-constitutes a Schedule I substance under the "catch-all" provision of N.C. Gen.Stat. § 90-89(5)(j).
Because 4-methylethcathinone is not specifically listed by name in Schedule I, the State contends that (1) the omission of the prefix "4-" in the original indictment in the present case is less problematic than the omission of the numerical prefixes in Ledwell and Ahmadi-Turshizi; and (2) amending the indictment to include the prefix was merely the correction of a clerical error rather than a substantial alteration. We are unable to agree.
The State does not contend that methylethcathinone-the substance identified in Defendant's original indictment in Count One-is classified as a Schedule I controlled substance. However, it is undisputed by the parties that 4 -methylethcathinone is a Schedule I controlled substance because it meets the conditions of N.C. Gen.Stat. § 90-89(5)(j), the "catch-all" provision, in that it is (1) structurally derived from *368 2-amino-1-phenyl-1-propanone; and (2) modified from that base structure in ways that are described within subsection (j).
An indictment that charges a defendant with PWIMSD a Schedule I substance must allege the possession of a substance that falls within Schedule I. The original indictment as to Count One did not satisfy this requirement, and as such, it was fatally defective. See Ledwell, 171 N.C.App. at 331, 614 S.E.2d at 414 (holding that possession of Schedule I controlled substance indictment was "facially insufficient" where it failed to allege substance actually classified in Schedule I). Thus, the amendment here cannot be described as a mere alteration to language extraneous to the allegations of the essential elements of the offense because-to the contrary-the amended language supplied an essential element to Count One that was previously lacking in the indictment for this charge.[2]
Second, the State argues that Ledwell and Ahmadi-Turshizi are distinguishable because the defendants in those cases "were actually tried on the faulty charges" whereas here, the State was permitted to amend the indictment and Defendant was then tried pursuant to the amended indictment. However, because we hold that the amendment *886 effectively added an essential element that was previously absent, it constituted a substantial alteration and, as a result, was legally impermissible. See De la Sancha Cobos, 211 N.C.App. at 542, 711 S.E.2d at 469 (where fatally flawed indictment was "[m]aterially amend[ed]" in attempt to cure defect, defendant's conviction must be vacated). As such, because the amendment here could not cure the defective nature of the original indictment, the distinction argued by the State does not change our conclusion that Defendant's conviction on Count One cannot stand.
Finally, the State notes that Defendant did not object to the amendment. However, Defendant's acquiescence to the amendment is irrelevant to our analysis because "a party cannot consent to subject matter jurisdiction." Id.; see also LePage, 204 N.C.App. at 49, 693 S.E.2d at 165 (explaining that the facial insufficiency of an indictment and the *369 resulting lack of jurisdiction by the trial court "may be challenged at any time, notwithstanding a defendant's failure to contest its validity in the trial court"). Accordingly, we conclude that Defendant's conviction on Count One of PWIMSD must be vacated.
B. Alleged Failure of Indictment to Adequately Apprise Defendant of Charges
Defendant next argues that the PWIMSD indictment was also facially invalid because it did not specifically indicate that the substances at issue were Schedule I controlled substances solely by virtue of their conformity with the characteristics set forth in the "catch-all" provision of N.C. Gen.Stat. § 90-89(5)(j). Defendant contends that in order to be valid, an indictment charging a defendant with PWIMSD a Schedule I controlled substance must provide notice of the State's "intent to prosecute a defendant for possession of a substance falling within the catch-all provision of § 90-89(5)(j) where the substance is not otherwise named in the statute." Because we have already vacated Count One of the charge of PWIMSD, we need only address Count Two of the indictment, which asserts that Defendant possessed "Methylone, which is included in Schedule I of the North Carolina Controlled Substances Act."
On appeal, this Court reviews the sufficiency of an indictment de novo. State v. Marshall, 188 N.C.App. 744, 748, 656 S.E.2d 709, 712 (2008). "The purpose of an indictment is to inform a party so that he may learn with reasonable certainty the nature of the crime of which he is accused." State v. Brinson, 337 N.C. 764, 768, 448 S.E.2d 822, 824 (1994) (citation, quotation marks, brackets, and ellipses omitted). Consequently, as discussed in the previous section, "[a]n indictment ... charging a statutory offense must allege all of the essential elements of the offense." State v. Crabtree, 286 N.C. 541, 544, 212 S.E.2d 103, 105 (1975) ; see also N.C. Gen.Stat. § 15A-924(a)(5) (explaining that indictment must contain allegations supporting every essential element of criminal offense in order to be valid). The offense of PWIMSD under N.C. Gen.Stat. § 90-95(a)(1) has the following three elements: (1) possession of a substance; (2) that is a controlled substance; and (3) with the intent to manufacture, sell, or deliver that controlled substance. State v. Carr, 145 N.C.App. 335, 341, 549 S.E.2d 897, 901 (2001).
Here, Count Two of the PWIMSD indictment alleges each of these essential elements. It states that (1) Defendant possessed methylone; (2) methylone is a controlled substance "which is included in Schedule I"; and (3) Defendant possessed the methylone with the intent to *370 manufacture, sell, or deliver it. While the indictment for Count Two does not reference the specific subsection of N.C. Gen.Stat. § 90-89 that makes methylone a Schedule I controlled substance, the indictment sufficiently apprised Defendant of the nature of the charge against him by both tracking the language of N.C. Gen.Stat. § 90-95(a)(1) and alleging the possession of a substance that is, in fact, a Schedule I controlled substance (unlike the original indictment relating to Count One). As such, we do not believe that the indictment was required to expressly state the fact that methylone, while not expressly mentioned by name in *887 N.C. Gen.Stat. § 90-89, falls within the " catch-all" provision of N.C. Gen.Stat. § 90-89(5)(j). See State v. Harris, 219 N.C.App. 590, 592-93, 724 S.E.2d 633, 636 (2012) ("The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words." (citation and quotation marks omitted)). Defendant's argument on this issue is therefore overruled.
II. Denial of Motion to Dismiss
Defendant next contends that the trial court erred in denying his motions to dismiss as to (1) one count of PWIMSD; and (2) the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance. We address each of his contentions in turn.
A. PWIMSD
Defendant argues that because N.C. Gen.Stat. § 90-89(5) states that "any material, compound, mixture, or preparation that contains any quantity of" a substance that meets the characteristics of subsection (j) is a Schedule I substance, the evidence presented at trial was only sufficient to support one count-rather than two counts-of PWIMSD because the substance found at Defendant's residence was a mixture of two such compounds contained within a single bag. N.C. Gen.Stat. § 90-89(5) (emphasis added). For this reason, he contends, the trial court should have allowed only one count of PWIMSD to go to the jury. In making this argument, Defendant does not challenge the sufficiency of the evidence to support his conviction of possession of methylone with intent to manufacture, sell, or deliver; instead, he only contests the adequacy of the evidence to support two separate counts of PWIMSD.
However, Defendant's argument on this issue is premised on the fact that he was convicted of both counts of PWIMSD. Because, as discussed above, we are vacating his conviction as to Count One, we need not address this issue.
*371 B. Maintaining a Dwelling for the Purpose of Keeping or Selling a Controlled Substance
Finally, Defendant contends that the trial court erred in denying his motion to dismiss the charge of maintaining a dwelling for the purpose of keeping or selling a controlled substance because the State failed to establish either that (1) Defendant kept or maintained the Oak Knoll Drive residence; or (2) Defendant used the Oak Knoll Drive residence for the purpose of keeping or selling a controlled substance. We disagree.
In order to survive a defendant's motion to dismiss as to this charge, the State must present substantial evidence that the defendant "(1) knowingly or intentionally kept or maintained; (2) a building or other place; (3) being used for the keeping or selling of a controlled substance." State v. Fuller, 196 N.C.App. 412, 424, 674 S.E.2d 824, 832 (2009) (citation and quotation marks omitted).
1. "Kept or Maintained a Dwelling" Element
With regard to the first element of the offense, "[f]actors which may be taken into consideration in determining whether a person keeps or maintains a dwelling include ownership of the property, occupancy of the property, repairs to the property, payment of utilities, payment of repairs, and payment of rent." State v. Baldwin, 161 N.C.App. 382, 393, 588 S.E.2d 497, 506 (2003). None of the above factors is dispositive, and the court must consider the totality of the circumstances when determining whether the evidence was sufficient to support the conclusion that the defendant kept or maintained the dwelling. Id.; State v. Frazier, 142 N.C.App. 361, 365, 542 S.E.2d 682, 686 (2001).
Here, the State put forth evidence that (1) Defendant received mail addressed to him at the Oak Knoll Drive residence; (2) Defendant's probation officer had visited Defendant at the Oak Knoll Drive residence on numerous occasions, "most likely in excess of 10 [times]" to conduct "routine home contacts" in order to ensure that Defendant was *888 in compliance with the conditions of his probation; (3) several of Defendant's personal effects were recovered during the search of the residence, including a pay stub and protective gear from Defendant's employment; and (4) Defendant placed a phone call from the Iredell County Detention Center and informed the other party on the line that law enforcement officers had "come and searched his house and found two ounces of Molly."[3] (Emphasis added.) Defendant argues that this evidence was *372 insufficient to show that he "maintained or kept" the dwelling because while it indicated that he "lived in the house" at Oak Knoll Drive, it did not demonstrate that he was financially or otherwise responsible for the dwelling and its upkeep.
This Court has previously explained that although "occupancy, without more, will not support the element of 'maintaining' a dwelling.... evidence of residency, standing alone, is sufficient to support the element of maintaining." State v. Cowan, 194 N.C.App. 330, 337, 669 S.E.2d 811, 817 (2008) (citation, quotation marks, and alterations omitted and emphasis added); see also State v. Shine, 173 N.C.App. 699, 707, 619 S.E.2d 895, 900 (2005) (concluding that "the trial judge properly found that a reasonable jury could conclude that defendant kept or maintained [the] property" where defendant's probation officer "visited him at the property five weeks prior to the execution of the search warrant, and defendant confirmed it was his residence"). Indeed, in State v. Spencer, 192 N.C.App. 143, 664 S.E.2d 601 (2008), disc. review denied, 363 N.C. 380, 680 S.E.2d 208 (2009), this Court expressly held that a defendant's own statement that he resided at the dwelling in question constituted "substantial evidence that defendant maintained [that] dwelling" and was sufficient to withstand the defendant's motion to dismiss the charge of maintaining a dwelling for the keeping or selling of a controlled substance. Id. at 148, 664 S.E.2d at 605.
In his brief, Defendant asserts that our more recent precedents involving this issue such as Spencer are inconsistent with our prior decisions in State v. Bowens, 140 N.C.App. 217, 535 S.E.2d 870 (2000), disc. review denied, 353 N.C. 383, 547 S.E.2d 417 (2001) ; State v. Kraus, 147 N.C.App. 766, 557 S.E.2d 144 (2001) ; and State v. Harris, 157 N.C.App. 647, 580 S.E.2d 63 (2003), and should be disregarded on that basis. In Bowens, Kraus, and Harris, however, the evidence presented by the State only demonstrated that the defendant temporarily occupied the building or dwelling in question and did not establish that the defendant actually lived there. See Harris, 157 N.C.App. at 652-53, 580 S.E.2d at 66-67 (evidence showing defendant was seen at residence "several times over a period of two months" and had some personal papers at residence, none of which listed residence's address as his address, was insufficient to establish that defendant maintained residence); Kraus, 147 N.C.App. at 769, 557 S.E.2d at 147 (evidence that defendant occupied motel room "for less than twenty-four hours" and had access to room key was insufficient to show that defendant maintained motel room to keep or sell controlled substances); Bowens, 140 N.C.App. at 221-22, 535 S.E.2d at 873 (evidence was insufficient to support charge *373 of maintaining dwelling to keep or sell controlled substances where defendant was seen entering and exiting dwelling eight to ten times over course of two to three days and police officer testified that he "believed" Defendant lived at dwelling but "offered no basis for that opinion").
As such, we discern no inconsistency between Spencer and Bowens, Kraus, and Harris. Therefore, we hold that the State's evidence in the present case that Defendant resided at the Oak Knoll Drive residence was sufficient to support the jury's finding as to the element of the offense that he maintained or kept a dwelling.
2. "For the Purpose of Keeping or Selling" Element
With regard to the third element of this offense, Defendant argues that the State failed to establish that the Oak Knoll Drive residence was used for keeping or selling a *889 controlled substance. "In determining whether a defendant maintained a dwelling for the purpose of selling illegal drugs, this Court has looked at factors including the amount of drugs present and paraphernalia found in the dwelling." State v. Battle, 167 N.C.App. 730, 734, 606 S.E.2d 418, 421 (2005) (emphasis omitted). Our Court has also noted that the discovery of "a large amount of cash" in the dwelling or building can indicate that a particular place is being used to keep or sell controlled substances. Frazier, 142 N.C.App. at 366, 542 S.E.2d at 686.
Here, the State presented evidence that a bag containing 39.7 grams of a substance consisting of 4-methylethcathinone and methylone was discovered inside the pocket of a pair of men's pants within Defendant's bedroom closet alongside another plastic bag, which contained "numerous little corner baggies." A set of digital scales and $460.00 in twenty dollar bills were also found in Defendant's bedroom. The State elicited testimony from a Statesville Police Department narcotics officer that (1) corner baggies are typically used when drugs are packaged and sold in smaller amounts; (2) digital scales are often utilized in the sale of narcotics to "weigh out specific amounts of narcotics"; and (3) purchases of controlled substances are frequently made in $20 increments.
We conclude that this evidence was sufficient to permit "a reasonable jury to conclude that the residence in question was being used for keeping or selling controlled substances." Shine, 173 N.C.App. at 708, 619 S.E.2d at 900 (evidence that digital scales "of the type frequently used to weigh controlled substances" were found in residence in close proximity to two bags of cocaine and pieces of scrap paper with names and dollar amounts written on them was sufficient to show residence was used for keeping or selling controlled substances); see *374 State v. Rich, 87 N.C.App. 380, 383-84, 361 S.E.2d 321, 324 (1987) (evidence of "materials related to the use and sale of cocaine," which included two bags of cocaine of differing levels of purity, numerous small plastic bags, and tools "commonly used in repackaging and selling cocaine," was sufficient to sustain conviction for maintaining dwelling for purpose of keeping or selling controlled substances). Accordingly, Defendant's argument on this issue lacks merit.
Conclusion
For the reasons stated above, we vacate Defendant's conviction on Count One of PWIMSD arising from Defendant's possession of 4-methylethcathinone. We conclude that the trial court did not err in entering judgment on Defendant's convictions for the remaining charges, and those convictions shall remain undisturbed.[4]
NO ERROR IN PART; VACATED IN PART.
Judges ELMORE and TYSON concur.

A "corner baggie" was defined by Investigator Huffman during her trial testimony as "the corner of a plastic baggie that's been snipped off" to form a smaller bag.

The State argues that State v. Davis, 223 N.C.App. 296, 733 S.E.2d 191 (2012), is more analogous to the present case than Ledwell or Ahmadi-Turshizi because it also involved a "catch-all" statutory provision. However, Davis addressed whether a fatal variance existed between the indictment and the proof at trial regarding the defendant's charge of trafficking in opium-not whether the indictment itself was fatally defective by failing to properly allege a controlled substance (such that the trial court lacked subject matter jurisdiction over the case in the first place). Id. at 299, 733 S.E.2d at 192-93. As such, Davis is not applicable.

Icard testified at trial that "Molly" is a street name that is used to refer to both ecstasy and bath salts.

When the trial court entered judgment, it sentenced Defendant to 90 to 120 months imprisonment for Count One of PWIMSD. In a separate judgment, the trial court consolidated Count Two of PWIMSD with the maintaining a dwelling for the purpose of keeping or selling a controlled substance offense and sentenced Defendant to a second term of 90 to 120 months to run consecutively. Because we are vacating Count One, which was not consolidated for judgment with Defendant's other convictions, we need not remand to the trial court for resentencing. See State v. Wortham, 318 N.C. 669, 674, 351 S.E.2d 294, 297 (1987) (explaining that remanding for resentencing is necessary only when conviction being vacated was consolidated with other convictions that were upheld on appeal).