IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-615

 Filed: 5 April 2016

Johnston County, No. 13CRS051137

STATE OF NORTH CAROLINA

 v.

MORRIS LEAVETT STITH, Defendant.

 Appeal by Defendant from judgment entered 24 September 2014 by Judge

Claire V. Hill in Johnston County Superior Court. Heard in the Court of Appeals 4

November 2015.

 Attorney General Roy A. Cooper, III, by Special Deputy Attorney General
 Charles G. Whitehead, for the State.

 Kimberly P. Hoppin for the Defendant.

 DILLON, Judge.

 Morris Leavett Stith (“Defendant”) appeals from a judgment entered upon jury

verdicts finding him guilty of (1) possession with intent to sell or deliver an opium

derivative and (2) trafficking in an opium derivative by sale. For the following

reasons, we find no error.

 I. Background

 On 21 November 2012, Defendant sold fifteen (15) pills containing a controlled

substance (hydrocodone) combined with a non-controlled substance (acetaminophen)

to a confidential police informant for $75.
 STATE V. STITH

 Opinion of the Court

 Defendant was subsequently indicted by a Johnston County grand jury with

(1) possession with intent to sell or deliver a Schedule II controlled substance and (2)

trafficking in an opium derivative by sale. The matter came on for a two-day trial in

superior court.

 The jury found Defendant guilty of (1) possession with intent to sell or deliver

a Schedule III (as opposed to a Schedule II) controlled substance and (2) trafficking

in an opium derivative by sale. Defendant stipulated to his status as an habitual

felon. The trial court consolidated the charges for judgment, sentencing Defendant

to prison for ninety (90) to 120 months based on certain mitigating factors. Defendant

entered notice of appeal in open court.

 II. Analysis

 Defendant makes a number of arguments that the judgments should be

vacated based on his contentions that the drug was misidentified in the indictments

and that the trial court erred in allowing the prosecutor to amend the indictments.

We address each conviction in turn.

 A. Possession of Controlled Substance with Intent to Sell or Deliver

 1. The Indictment

 The original indictment returned by the grand jury charged Defendant the

possession of the controlled substance “hydrocodone” (combined with a non-narcotic,

 -2-
 STATE V. STITH

 Opinion of the Court

acetaminophen) and stated that this substance was a Schedule II drug. Specifically,

the indictment stated, in relevant part, as follows:

 Offense: Possession of a SCH II CS [Schedule II Controlled
 Substance] with Intent to Sell or Deliver

 . . . Defendant . . . did [feloniously] possess
 acetaminophen and hydrocodone bitartrate[.]
 Acetaminophen and hydrocodone bitartrate [] is a
 controlled substance which is included in Schedule II
 of the North Carolina Controlled Substance Act[.]

 2. The Amendment to the Indictment and the Evidence at Trial

 Hydrocodone is a drug listed in Schedule II, the possession of which (with the

intent to sell or deliver) is a Class H felony. N.C. Gen. Stat. §§ 90-90(1)(a)(10), 90-

95(b)(1) (2012). However, by the start of the trial, it became apparent to the State

that its evidence would show that the hydrocodone possessed by Defendant was

combined with a non-narcotic such that the hydrocodone is considered under our law

to be a Schedule III controlled substance, the possession of which (with the intent to

sell or deliver) is only a Class I felony. Id. §§ 90-91(d)(3)-(5), 90-95(b)(2). Accordingly,

the State made a request that it be allowed to strike through the phrase “Schedule II

of” in the indictment, which the trial court granted.

 During the trial, the State’s evidence tended to show that Defendant possessed

pills containing hydrocodone bitartrate1 combined with acetaminophen, but that the

 1As stated in Defendant’s brief, the term “bitartrate” in the indictment does not refer to any
controlled substance but merely modifies “hydrocodone” as being in a certain salt form.

 -3-
 STATE V. STITH

 Opinion of the Court

pills were of such weight and combination to bring the hydrocodone within Schedule

III. Defendant was convicted of possessing Schedule III hydrocodone with the intent

to sell or deliver, a Class I felony.

 3. Holding

 We hold that the original indictment, as returned by the grand jury, was

sufficient to charge the crime of possessing hydrocodone, a Schedule II controlled

substance (and noting that the hydrocodone was combined with the non-narcotic,

acetaminophen). We hold that the indictment was sufficient to allow the jury to

convict Defendant of possessing hydrocodone under Schedule III, based on its

determination that the hydrocodone pills were under a certain weight and combined

with acetaminophen within a certain ratio to bring it within Schedule III. That is,

the jury did not convict Defendant of possessing an entirely different controlled

substance than that which the grand jury had found Defendant to have possessed

when it returned the original indictment. Finally, we hold that the strikethrough of

the words “Schedule II of” from the indictment allowed at the start of trial was not

reversible error and was not otherwise prejudicial to Defendant.

 It is true that amending an indictment is statutorily prohibited. See N.C. Gen.

Stat. § 15A-923(e) (2014). However, our Supreme Court has held that not all change

to an indictment is error. Specifically, the Court interpreted the term “amendment”

in the statute to mean “any change in the indictment which would substantially alter

 -4-
 STATE V. STITH

 Opinion of the Court

the charge set forth in the indictment.” State v. Price, 310 N.C. 596, 598, 313 S.E.2d

556, 558 (1984). Therefore, as our Court has held, while “amending an indictment to

add an essential element to the allegations contained therein constitutes a

substantial alteration[,] . . . an amendment that simply corrects an error unconnected

and extraneous to the allegations of the essential elements . . . is not[.]” State v.

Williams, ___ N.C. App. ___, ___, 774 S.E.2d 880, 883 (2015).

 It is true that the identity of the controlled substance is an essential element of

the crime of possession of a controlled substance with the intent to sell or deliver.

State v. Board, 296 N.C. 652, 657, 252 S.E.2d 803, 806 (1979). However, as our

Supreme Court has observed, the controlled substance need not be identified by the

identical language used in the statute, but rather, the controlled substance may be

identified “by whatever official name, common or usual name, chemical name, or

trade name[.]”2 Id. at 658, 252 S.E.2d at 807. See also State v. Sullivan, ___ N.C.

App. ___, ___, 775 S.E.2d 23, 27 (2015) (holding that an indictment was fatal because

the name employed to identify the controlled substance was not the name used in the

statute nor was there evidence that the name was the trade name); State v. Newton,

21 N.C. App. 384, 386, 204 S.E.2d 724, 725 (1974) (holding that indictment was

sufficient where the controlled substance was identified by its trade name rather than

by the name used in the statutory language).

 2This quoted language is the same language used in each of the statutes which identifies the
schedules of controlled substances. Compare N.C. Gen. Stat. § 90-90 with id. § 90-89.

 -5-
 STATE V. STITH

 Opinion of the Court

 In the present case, the original indictment identified the controlled substance

possessed by Defendant as hydrocodone, and the jury ultimately convicted Defendant

of possessing hydrocodone. The “change” in the indictment did not change the

identity of the controlled substance. It only eliminated one of the two references to

Schedule II. (Even with the strikethrough, the face of the indictment still contained

a reference to Schedule II in its heading, identifying the offense charged as

“Possession of SCH II CS [Schedule II controlled substance] with Intent to Sell or

Deliver.”) In any case, even changing “Schedule II” to “Schedule III” would not have

changed the identity of the controlled substance (hydrocodone) combined with

acetaminophen in this case, but rather it would have merely changed the maximum

weight of hydrocodone and ratio of hydrocodone with acetaminophen in each pill such

that each pill would be considered a Schedule III drug.

 4. Schedule II Hydrocodone vs. Schedule III Hydrocodone

 The State’s expert described the pills possessed by Defendant as Schedule III

hydrocodone. Some clarification is necessary since “hydrocodone” is referred to by its

synonym “dihydrocodeinone” in Schedule III of our statutes, which is provided below:

 “Hydrocodone” is a controlled substance and is listed on Schedule II. N.C. Gen.

Stat. § 90-90(1)(a)(10) (2012). However, hydrocodone can also be a Schedule III

substance when it is at or below a certain dosage weight and combined within a

certain ratio with a “nonnarcotic ingredient,” such as acetaminophen. Id. § 90-

 -6-
 STATE V. STITH

 Opinion of the Court

91(d)(4). In other words, hydrocodone, whether by itself or combined with a non-

narcotic, is a Schedule II drug unless it is below a certain amount and combined

within a certain ratio with the non-narcotic, in which case it is considered a Schedule

III drug, the possession of which carries a lighter punishment.

 In Schedule III, “hydrocodone” is actually referred to by its synonym

“dihydrocodeinone.” See id. Our Court has observed that, as discussed above,

Schedule III hydrocodone (or dihydrocodeinone) is differentiated from Schedule II

hydrocodone “by the quantitative ratio of dihydrocodeinone to nonnarcotic

ingredients [such as acetaminophen] per dosage unit.” State v. Johnson, 214 N.C.

App. 436, 441, 714 S.E.2d 502, 506 (2011) (emphasis in original). Our Supreme Court

has referred to “dihydrocodeinone” as “dihydrocodeinone (hydrocodone).” State v.

Ward, 364 N.C. 133, 138 n. 2, 694 S.E.2d 738, 741 n. 2 (2010). Other jurisdictions

also recognize that hydrocodone and “dihydrocodeinone” are the same controlled

substance. See State v. Benedict, 887 So.2d 649, 651 (2004) (observing that the

substances are equivalent under Louisiana law); N.Y. CLS Pub. Health § 3306 (2015)

(referring to hydrocodone as “hydrocodone (also known as dihydrocodeinone)” under

Schedule II of New York’s controlled substances law); State v. Pewitte, 2014 Tenn.

Crim. App. LEXIS 261, *14, n. 3 (2014) (unpublished opinion) (noting the use of

“hydrocodone” and “dihydrocodeinone” interchangeably); State v. Pagan, 2011 Wash.

App. LEXIS 88, *6 n. 3 (2011) (unpublished opinion) (explaining that “hydrocodone”

 -7-
 STATE V. STITH

 Opinion of the Court

and “dihydrocodeinone” are synonyms, citing a number of medical sources); United

States v. McKinney, 2009 U.S. Dist. LEXIS 35825, *13 (2009) (unpublished opinion)

(citing 21 C.F.R. § 1308.13(e)(1)(iii)-(iv)).

 Likewise, the term “dihydrocodeinone” does not appear in Schedule II, but is

referred to by its synonym “hydrocodone,” but “dihydrocodeinone” is not to be confused

with an entirely different Schedule II controlled substance, “dihydrocodeine”

referenced in N.C. Gen. Stat. § 90-90(2)(f).

 5. This Case is Distinguishable from Recent Cases Cited by Defendant

 Defendant argues that we are compelled to find that the indictment was

insufficient to convict him of possessing Schedule III hydrocodone, citing a number of

cases. See, e.g., State v. Ahmadi-Turshizi, 175 N.C. App. 783, 784-85, 625 S.E.2d 604,

605 (2006) (“When a defendant has been charged with possession of a controlled

substance, the identity of the controlled substance that defendant allegedly possessed

is considered to be an essential element which must be alleged properly in the

indictment.”). Indeed, our Court has required that controlled substances be identified

with precision, noting that “the legal definition of these [controlled] substance[s] is

itself technical and requires precision.” State v. Ledwell, 171 N.C. App. 328, 332, 614

S.E.2d 412, 415 (2005). However, we hold that the present case is distinguishable.

 In Ledwell, a 2005 case, our Court held that an indictment identifying the drug

as “Methylenedioxyamphetamine (MDA)” was fatal because this term did not refer to

 -8-
 STATE V. STITH

 Opinion of the Court

the same substance as the controlled substance listed in our statutes as “3,4 –

Methylenedioxyamphetamine (MDA).” Id. at 331-33, 614 S.E.2d at 414-15. The next

year, our Court relied on Ledwell to reach an identical holding. Ahmadi-Turshizi,

175 N.C. App. at 786, 625 S.E.2d at 605-06. These cases were based on the fact that

MDA is not identical to 3,4-methylenedioxyamphetamine. See Board, 296 N.C. at

657-58, 252 S.E.2d at 806-07.

 In 2010, our Court held that an indictment identifying the controlled substance

as “Benzodiazepines, which is included in Schedule IV” was defective because

“benzodiazepines” is not found in Schedule IV but refers to a category of drugs, some

of which are named in Schedule IV. State v. LePage, 204 N.C. App. 37, 54, 693 S.E.2d

157, 168 (2010). The actual drug at issue was clonazepam, which is a Schedule IV

drug. N.C. Gen. Stat. § 90-92(a)(1)(i) (2012). The LePage Court based its holding on

the fact that “benzodiazepines,” (the term used in the indictment) is not the same

controlled substance as “clonazepam” (the drug actually possessed), but rather

clonazepam is a particular controlled substance within the benzodiazepines category

of controlled substances. 204 N.C. App. at 54, 693 S.E.2d at 168. Accordingly, based

on LePage, our Court is compelled to conclude that a drafter of an indictment has

failed to use sufficient technical precision by identifying clonazepam as

“benzodiazepines, a Schedule IV drug.” See id.

 -9-
 STATE V. STITH

 Opinion of the Court

 In 2015, our Court held that the trial court erred by allowing the State to

amend an indictment by adding the prefix “4-” to the word “methylethcathinone.”

Williams, ___ N.C. App. at ___, 774 S.E.2d at 885-87. The Court essentially held that

adding the numeric prefix changed the identity of the controlled substance and

therefore “added an essential element [to the indictment] that was previously absent,

[] constitut[ing] a substantial alteration[.]” Id. at ___, 774 S.E.2d at 885-86.

 However, unlike the above cases, in the present case the indictment was not

changed such that the identity of the controlled substance was changed. Rather, it

was changed to reflect that the controlled substance was below a certain weight and

mixed with a non-narcotic (the identify of which was also contained in the indictment)

to lower the punishment from a Class H felony to a Class I felony. The grand jury

returning the indictment and the jury convicting Defendant both concluded that the

controlled substance possessed by Defendant was hydrocodone.

 Moreover, we believe that the indictment adequately apprised Defendant of

the controlled substance that he possessed, hydrocodone. The indictment also alleged

that the hydrocodone was combined with acetaminophen. The fact that the evidence

at trial showed that the ratio of hydrocodone to acetaminophen and the weight of

hydrocodone contained in each pill was sufficient to bring it within Schedule III did

 - 10 -
 STATE V. STITH

 Opinion of the Court

not render the indictment invalid, nor does it create a fatal variance.3 Further, the

amendment allowed by the trial court was not material because the strikethrough of

certain language did not alter the identity of the controlled substance which

Defendant was alleged to have possessed; and, in any case, even with the

strikethrough, the face of the indictment still charged Defendant with possessing

Schedule II hydrocodone.

 Though not controlling, we find the case Graham v. State of Mississippi, 935

So.2d 1119 (2006), persuasive. In that case, the Mississippi intermediate appellate

court held that an amendment to an indictment for the sale of hydrocodone which

changed the Schedule from “II” to “III” did not prejudice the defendant. Id. at 1121-

22. The Court specifically distinguished the case from another Mississippi opinion

finding the omission of the numeric prefix from a drug name (similar to the omission

which rendered the indictments fatal in Ledwell and Ahmadi-Turshizi) to be fatal.

Id. at 1121. See also State v. Toddy, 2000 Ohio App. LEXIS 5736, *10-11 (2000)

(unpublished opinion) (allowing amendment of indictment for trafficking in

hydrocodone by changing Schedule III to Schedule II).

 B. Trafficking in an Opium Derivative

 3The present situation is similar to a situation where a defendant is indicted with felonious
larceny of certain tools valued at over $1,000 (a felony because the value of the tools is over $1,000).
See N.C. Gen. Stat. § 14-72(a) (2012). There is no fatal variance merely because the jury determines
that the value of the tools was under $1,000 and convicts the defendant of a misdemeanor. See State
v. Jones, 275 N.C. 432, 437-38, 168 S.E.2d 380, 384 (1969).

 - 11 -
 STATE V. STITH

 Opinion of the Court

 Defendant was also indicted for trafficking an opium derivative, for selling the

hydrocodone pills. The indictment identifies the controlled substance using the same

language as the language used in the indictment charging Defendant with possession

with the intent to sell.

 On appeal, Defendant makes the same arguments concerning the change to

the indictment allowed by the trial court (namely, striking the words “Schedule II of”

as was allowed with the other indictment). For the same reasons, we hold that the

actions of the trial court did not constitute reversible error. Further, we hold that

there was no fatal variance between the indictment and the evidence at trial. The

indictment alleged that Defendant was trafficking in hydrocodone, and the evidence

tended to show that Defendant was trafficking in hydrocodone. Accordingly, this

argument is overruled.

 NO ERROR.

 Judge GEER concurs.

 Judge HUNTER, JR., dissents by separate opinion.

 - 12 -
 No. COA15-615 – State v. Stith

 HUNTER, JR., Robert N., Judge, Dissenting.

 I dissent. An indictment is the sine qua non of criminal jurisdiction as required

by Article I, Section 22 of the Constitution of North Carolina. To indict, twelve to

eighteen persons sitting as a grand jury have to concur in the indictment. N.C. Gen.

Stat. § 15A-621. The language of an indictment is presented to the grand jury by a

District Attorney pursuant to N.C. Gen. Stat. § 15A-627. The purpose of

Constitutional provisions for indictments is: “(1) to provide certainty so as to identify

the offense, (2) to protect the accused from twice being put in jeopardy for the same

offense, (3) to enable the accused to prepare for trial, and (4) to enable the court, on

conviction or plea of guilty or Nolo contendere, to pronounce sentence according to

the rights of the case.” State v. Foster, 10 N.C. App. 141, 142–43, 177 S.E.2d 756, 757

(1970) (citation omitted); see also State v. Stokes, 274 N.C. 409, 411, 163 S.E.2d 770,

772 (1968). In my view, the language of the indictment fails under our precedents to

meet these standards.

 On 1 April 2013, the grand jury indicted Morris Leavett Stith on two counts,

as follows:

 Count I

 Offense: Possession of SCH II CS with Intent to Sell or
 Deliver
 Date of Offense: November 21, 2012
 In violation of: N.C.G.S. 90-95(a)(1)

 I. The jurors for the State upon their oath present that on
 or about November 21, 2012, in the county of Johnston, the
 STATE V. STITH

 HUNTER, JR., Robert N., J., dissenting

 Defendant named above, unlawfully, willfully, and
 feloniously did possess acetaminophen and hydrocodone
 bitartrate (Percocet), with the intent to sell or deliver said
 acetaminophen and hydrocodone bitartrate (Percocet).
 Acetaminophen and hydrocodone bitartrate (Percocet) is a
 controlled substance which is included in Schedule II of the
 North Carolina Controlled Substances Act. The act is in
 violation of N.C.G.S. § 90-95(a)(1).

 Count II

 Offense: Trafficking in Opiates, Synthetic Opiates and
 Opiate Derivatives by Sale
 Date of Offense: November 21, 2012
 In violation of: N.C.G.S. 90-95(h)(4)(a)

 II. The jurors for the State upon their oath further present
 that on or about November 21, 2012, in the county of
 Johnston, the Defendant named above intentionally,
 unlawfully, willfully, and feloniously did traffick in opium
 or opiates or a derivative or preparation of opium or opiate
 or any mixture containing such substances, by selling four
 (4) grams or more but less than fourteen (14) grams of
 Acetaminophen and Hydrocodone Bitartrate (Percocet), a
 controlled substance which is included in Schedule II of the
 North Carolina Controlled Substances Act, to Selma
 Jerome. This act was in violation of North Carolina
 General Statues Section 90-95(h)(4)(a).

 Count One of this indictment is jurisdictionally deficient under settled law of

this court consistently applied in State v. Ledwell, 171 N.C. App. 328, 331, 614 S.E.2d

412, 414 (2005), State v. Turshizi, 175 N.C. App. 783, 625 S.E.2d 604 (2006), and State

v. Sullivan, ___ N.C. App. ___, 775 S.E.2d 23 (2015). See also State v. Barnes, 213

N.C. App. 424, 714 S.E.2d 274 (2011) (unpublished). Count Two of the indictment is

 2
 STATE V. STITH

 HUNTER, JR., Robert N., J., dissenting

also jurisdictionally deficient because its language fails to meet all four of the

standards set forth in Foster and Stokes.

 Realizing under our holdings in Ledwell, Turshizi, and Sullivan that this

indictment did not confer jurisdiction to the trial court, the State moved to “amend”

the indictment, which the court granted, and the Assistant District Attorney struck

through “Schedule II” in Counts I and II. It is apparent the State did this in an

attempt to cure fatal defects in the indictment.

 Because only a grand jury can indict a defendant, a court is prohibited by

statute from amending an indictment in a material way. N.C. Gen. Stat. § 15A-

923(e); State v. White, 202 N.C. App. 524, 527, 689 S.E.2d 595, 596–97 (2010) (“[O]ur

appellate courts have interpreted [section 15A-923(e)] to mean that a bill of

indictment may not be amended in a manner that substantially alters the charged

offense.”) (citations and quotation marks omitted). Because the original indictment

was defective, one cannot tell whether the amended version would have been

concurred by twelve grand jurors or not. The defects could have been cured in

advance of the trial had the Assistant District Attorney sought a superseding

indictment, but she did not. The court lacked jurisdiction to both hear the matter or

to amend the indictment.

 The trafficking statute charged in Count II, N.C. Gen. Stat. § 90-95(h)(4)(a),

punishes “[a]ny person who sells, manufactures, delivers, transports, or possesses

 3
 STATE V. STITH

 HUNTER, JR., Robert N., J., dissenting

four grams or more [but less than fourteen grams] of opium or opiate, or any salt,

compound, derivative or preparation of opium or opiate (except apomorphine,

nalbuphine, analoxone and naltrexone and their respective salts), including heroin,

or any mixture containing such substance . . . .” N.C. Gen. Stat. § 90-95(h)(4)(a).

Count II alleges Defendant trafficked “a controlled substance which is included in

Schedule II of the North Carolina Controlled Substances Act.” Our statutes define a

“controlled substance” as a “drug, substance, or immediate precursor included in

Schedules I through VI” of the North Carolina Controlled Substances Act. N.C. Gen.

Stat. § 90-87(5).

 Reviewing the indictment, it is unclear whether the grand jury concurred in

finding Defendant trafficked “opiates, synthetic opiates, or opiate derivatives,”

“Acetaminophen and Hyrdrocodone Bitartrate,” “Percocet,” or “a controlled substance

which is included in Schedule II of the North Carolina Controlled Substances Act.”

Schedule II includes “opium and opiate, and any salt, compound, derivative, or

preparation of opium and opiate,” N.C. Gen. Stat. § 90-90(1)(a), and “Hydrocodone,”

N.C. Gen. Stat. § 90-90(1)(a)(10), but it does not enumerate Acetaminophen,

Hydrocondone Bitartrate, Percocet, or the substance proven at trial,

“Hydrocodeinone,” which appears as “dihydrocodeinone” in Schedule III. N.C. Gen.

Stat. § 90-91(d)(3)–(4). This flaw poses jurisdictional problems for the trial court.

 4
 STATE V. STITH

 HUNTER, JR., Robert N., J., dissenting

 Under the long standing jurisprudence of this Court, and our Supreme Court,

it is apparent the trial court did not have jurisdiction to act under the indictment. “It

is elementary that a valid bill of indictment is essential to the jurisdiction of the trial

court to try an accused for a felony.” Ledwell, 171 N.C. App. at 331, 614 S.E.2d at

414 (citing State v. Sturdivant, 304 N.C. 293, 308, 283 S.E.2d 719 (1981)). “An

‘indictment must allege all of the essential elements of the crime sought to be

charged.’” Ledwell, 171 N.C. App. at 331, 614 S.E.2d at 414 (citing State v.

Westbrooks, 345 N.C. 43, 57, 478 S.E.2d 483, 492 (1996)). “Identity of a controlled

substance allegedly possessed is such an essential element.” Ledwell, 171 N.C. App.

at 331, 614 S.E.2d at 414 (citation omitted). “An indictment is invalid where it fails

to state some essential and necessary element of the offense of which the defendant

is found guilty.” Id. (citations and quotation marks omitted).

 Punishment for trafficking opiates depends upon drug weight, not drug

scheduling. N.C. Gen. Stat. §§ 90-95(h)(4)(a)–(c). The State was not required to cite

Schedule II, or any specific controlled substance schedule, when it indicted Defendant

for violating N.C. Gen. Stat. § 90-95(h)(4)(a). Nonetheless, the State incorrectly

identified the controlled substance, hydrocodeninone, with the “Schedule II”

language. This identification is essential to the indictment, and it marks a fatal flaw

that deprives the court of jurisdiction. Ledwell, 171 N.C. App. at 331, 614 S.E.2d at

414 (citation omitted).

 5
 STATE V. STITH

 HUNTER, JR., Robert N., J., dissenting

 Further, the State changed the identity of the controlled substance alleged in

Count II by striking the “Schedule II” language, which is an inherently statutory

matter. Our statutes prevent trial courts from making these kinds of amendments

precisely so only a grand jury can indict a defendant as provided in our Constitution.

N.C. Gen. Stat. § 15A-923(e); N.C. Const. art. I, § 22. With a fatally flawed indictment

and no jurisdiction to impose a felony judgment, the trial court should have dismissed

the case. I am not persuaded by the majority’s attempts to distinguish the controlling

decisions. We are bound to follow these decisions. In re Civil Penalty, 324 N.C. 373,

384, 379 S.E.2d 30, 37 (1989). Nor am I persuaded by the law of Louisiana in this

matter. Believing that a certain result should obtain in this case does not follow the

law. Therefore, I must respectfully dissent and I would vacate the judgment imposed

on Counts I and II. See Ledwell, 171 N.C. App. 328, 614 S.E.2d 412; Turshizi, 175

N.C. App. 783, 625 S.E.2d 604; Sullivan, ___ N.C. App. ___, 775 S.E.2d 23.

 6