STATE v. HAZEL

[226 N.C. App. 336 (2013)]

———————

STATE OF NORTH CAROLINA
v.
JAMES LAMONT HAZEL

No. COA12-1102

Filed 2 April 2013

1. **Drugs—trafficking—constructive possession—sufficient other incriminating circumstances—erroneous testimony not plain error**

   The trial court did not commit plain error in a drug trafficking case by allowing the State's witnesses to characterize the apartment where the drugs were found as defendant's apartment, and in allowing State's witnesses to refer to the individual who gave consent to enter the apartment as defendant's roommate. Evidence of defendant's repeated statements that the heroin recovered from the apartment belonged to him constituted sufficient other incriminating circumstances for constructive possession to be inferred. Even assuming, *arguendo*, that the admission of the contested testimony constituted error, it did not rise to the level of plain error.

2. **Drugs—trafficking—amount of drugs combined**

   The trial court did not err by denying defendant's motion to dismiss a heroin trafficking charge. The trial court correctly allowed the heroin recovered from defendant's person to be combined with the heroin recovered from the apartment for the purposes of charging defendant with trafficking.

Appeal by Defendant from judgments entered 27 April 2012 by Judge Eric L. Levinson in Superior Court, Mecklenburg County. Heard in the Court of Appeals 11 February 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Massengale & Ozer, by Marilyn G. Ozer, for Defendant.*

McGEE, Judge.

James Lamont Hazel (Defendant) was indicted on multiple drug charges including, relevant to this opinion, four counts of possession with intent to distribute heroin, four counts of selling heroin, and one count of trafficking in heroin by possession.

Detective Sidney Jerome Lackey (Detective Lackey), an undercover officer for the Charlotte-Mecklenburg Police Department, received a tip from a confidential informant that Defendant was dealing heroin. Detective Lackey used a phone number he obtained from his confidential informant to set up four undercover heroin purchases, an operation known as a "buy/bust." A "buy/bust" on 1 December 2010 was the last of the four phases of the operation. On that day, two officers with the Charlotte-Mecklenburg Police Department were positioned in the parking lot of an apartment complex located at 1605 Ivy Meadow Lane in Charlotte, where the buy was to take place. While in the parking lot, the officers observed Defendant drive into the parking lot at 10:40 a.m. A third officer, Detective Amir Holding (Detective Holding), testified he watched Defendant exit a car and walk over to breezeway number two. Detective Holding then walked over to breezeway number two, where he heard a door close. Detective Holding waited at the breezeway for ten to fifteen minutes, saw Defendant exit Apartment 216 (the apartment) between 11:05 and 11:10 a.m., and walk toward the front of the apartment complex. At the same time, Detective Lackey arrived at the apartment complex and picked Defendant up in front of the apartment complex. Detective Lackey gave Defendant $800.00 in return for 3.97 grams of heroin. Once the transaction was complete, Detective Lackey gave the "takedown" signal. Defendant was read his *Miranda* rights and placed under arrest. Because Detective Lackey was still operating undercover, other officers collected the evidence, including the 3.97 grams of heroin, and interviewed Defendant.

Defendant led officers to the apartment, gave them a key to the apartment, and permission to enter. One of the officers testified he had verbal consent to enter the apartment from another man who said he lived in the apartment; however, the officer failed to write down the man's name

STATE v. HAZEL

[226 N.C. App. 336 (2013)]

or obtain a recorded statement. The officers testified they did not know if the man who allegedly gave consent to enter the apartment had been in the apartment that day, and they could no longer remember the man's name. There was testimony that the man's name was not on the lease of the apartment.

Defendant directed officers to the only bedroom in the apartment, where they found a clear plastic bag containing Defendant's clothes. Defendant also directed officers to an additional 0.97 grams of heroin in the kitchen, which was packaged in the same manner as the heroin previously sold in the parking lot buy/bust. The total weight of heroin recovered from Defendant and the apartment was 4.94 grams.

Defendant moved to dismiss the trafficking charge on 2 March 2012, arguing that the trial court should dismiss the charge because the drugs purchased from Defendant in the parking lot and the drugs seized from Defendant in the apartment constituted two separate possession charges, rather than one combined trafficking charge. The trial court denied Defendant's motion. Defendant was found guilty of four counts of sale of heroin, four counts of possession with intent to sell or deliver heroin, and one count of trafficking in heroin by possession. Defendant was sentenced to a combined active term of 83-100 months. Defendant appeals.

I.

We first note that Defendant challenges on appeal only his conviction for trafficking in heroin by possession. The issues on appeal are whether: (1) the trial court improperly combined the heroin recovered from Defendant's person with the heroin recovered from the apartment to support the trafficking charge and (2) the trial court committed plain error by failing to *sua sponte* exclude testimony indicating that Defendant had possession or control over the apartment. We address Defendant's second argument first.

II.

[1] Defendant contends the trial court committed plain error in allowing State's witnesses to characterize the apartment as Defendant's apartment, and in allowing State's witnesses to refer to the individual who gave consent to enter the apartment as Defendant's roommate. We disagree.

Specifically, Defendant argues that because "[c]onvincing the jury that [Defendant] constructively possessed the heroin found in [the] [a]partment . . . was critical to the State's case[,]" the admission of this testimony prejudiced him. Because Defendant failed to properly preserve

these issues for appellate review, he now contends that the admission of this testimony rises to the level of plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice — that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." [*See also State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)] (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error). Moreover, because plain error is to be "applied cautiously and only in the exceptional case," the·error will often be one that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings,"

*State v. Lawrence*, __ N.C. __, __, 723 S.E.2d 326, 334 (2012) (citations omitted).

Officer Lackey testified that, following the arrest of Defendant and the seizure of the 3.97 grams of heroin from Defendant's person, additional evidence was recovered "from his [Defendant's] apartment." Defendant objected to the characterization of the apartment as belonging to Defendant, and the trial court sustained Defendant's objection. The jury was excused, and Defendant asked for a motion to strike, which the trial court granted. Upon the jury's return, the trial court instructed as follows:

> I will tell you before getting started, I believe the gentleman, the Detective, I think just before lunch may have characterized this residence or this structure that he was describing as, quote, his apartment; I think the reference possibly to [Defendant].

> Ladies and Gentlemen, I'm instructing you to disregard those comments from the gentleman that it was — when he described it as his residence. And we're going to continue to move forward. His apartment, I'm instructing you to disregard that.

> But if everybody understands what I'm saying, just raise your right hand.

(All jurors raise their right hand.)

Detective Terrance Gerald (Detective Gerald) testified the following morning, answering questions on direct as follows:

Q　And did [Defendant] make any statements?

A. Yes. Detective [Mark] Temple [Detective Temple] asked him about was he staying at that apartment, and he did advise that he was staying there with someone.

Q. And what apartment was that?

A. 216.

MR. ADELMAN: I'll object to that as well, Your Honor.

THE COURT: What's the basis of the objection?

MR. ADELMAN: A general objection.

THE COURT: Overruled.

Q. And did he make any other statements to —

A. Yes, he did. He advised -- Detective Temple asked him if he had any more of the drugs at the residence, and he —

MR. ADELMAN: Objection; hearsay.

THE COURT: Overruled.

A. -- and he advised that he did have additional drugs at the residence.

Q. And what did you do next?

A. ·At that time we walked over there. There were other detectives standing at the front door. [Defendant] had keys to the residence. Once [Defendant] -- once Detective Temple asked him if he had additional drugs at the residence, he said he did and that he asked if he could go on in and retrieve those drugs.

Q. And what if anything did [Defendant] say?

A. He said yes.

Q. And so what did you do next Detective Gerald?

A. Also Detective Temple called — [Defendant] gave a phone number to the guy he was staying with, so Detective

Temple called him as well.

MR. ADELMAN: Objection to the characterization guy he was staying with.

THE COURT: Mr. D.A., was this — it's important for us that we're, you know, delaying what the officer says or the detective says he recalls actually being said. So if you can try to clarify whether or not this is a characterization by him or whether or not this is words that he's recalling being stated to him.

MR. CLARK: Certainly, Your Honor.

Q. So what did — so were you standing with [Defendant] and Detective Temple?

A. I was.

Q. And you said that — did [Defendant] say he was staying with someone?

A. He did.

Q. And what did Detective Temple do next?

A. [Defendant] —

MR. ADELMAN: Well, objection as to what somebody else did next.

THE COURT: Overruled.

A. [Defendant] provided the phone number to the individual that was staying – that he was staying with at that apartment, and Detective Temple placed a phone call to him.

Q. And then what did you do next, Detective Gerald?

A. After Detective Temple received consent from the resident, the guy that he was staying with, over the telephone, and also received consent from [Defendant] to treat – for us to enter the apartment, we moved inside the apartment.

Q. And what did you do when you got inside the apartment?

A. [Defendant] directed us to show us where his clothes were in the apartment, and also where the additional drugs that were in his apartment.

. . . .

Q. And what if any statements did [Defendant] make?

MR. ADELMAN: I'll object to that.

THE COURT: Overruled.

A. [Defendant] kept saying that he didn't want the guy to get in trouble that he was with, that stayed there. He said that he was just staying there, he didn't have anywhere else to stay, and the additional drugs were his [Defendant's].

Defendant's attorney questioned Detective Gerald about the detective's characterization of the apartment as Defendant's apartment, and Detective Gerald responded: "I never said that [Defendant] said that's his apartment. I said [Defendant] said he was staying with someone."

Detective Temple testified that Defendant "gave me consent to enter and search his apartment which he possessed the keys to." Defendant objected to the characterization of the apartment as "his" [Defendant's] apartment, and the trial court again instructed the jury not to interpret Detective Temple's testimony as indicating that the apartment belonged to Defendant. Detective Temple further testified:

A. [Defendant] also stated that there was additional heroin located at the apartment. And at that point I went to retrieve the additional heroin, so I asked for consent to enter and search the apartment, which he did consent for me to enter and search. We then –

Q. Let me stop you right there. Why did you believe that this defendant had the authority to give consent to search another apartment?

A. Because he possessed the keys to that particular apartment.

Q. Did he make any statements about that particular apartment? And what apartment are we talking about?

A. We're talking about 1605, building two, apartment 216.

Q And what if any other statements did he make specifically about that apartment?

A. He told me that that's where he was staying, that he was staying with friends at that apartment, and he had his

clothes and belongings inside that apartment, in addition to the additional heroin.

Q. And you testified that he produced a key.

A. He did. During the arrest he had keys to that particular apartment on his person. I was informed by the officers on the scene that the keys were on his person during the arrest.

At trial, Defendant also objected to the following answer by Detective Temple:

Q. And I believe you testified a bit earlier that in addition to getting consent to go into that apartment from the defendant, you also spoke with a roommate and got consent; is that correct?

A. That is correct.

Q. Now, as part of –

MR. ADELMAN: Well, objection to the term roommate, Your Honor.

THE COURT: Overruled at this point. I think that term has been used before. Overruled.

The trial court correctly overruled Defendant's objection to the term "roommate" because that term had been used earlier in the trial without objection. *State v. Anthony*, 354 N.C. 372, 409, 555 S.E.2d 557, 582 (2001).

Defendant argues that testimony indicating the apartment belonged to Defendant, and testimony that the other man claiming control of the apartment was Defendant's roommate, had a probable impact on the jury's determination that Defendant constructively possessed the heroin in the apartment.

In *State v. Neal*, this Court stated:

Since the defendants did not have actual possession of the cocaine, the State relied upon the doctrine of constructive possession. Under that doctrine, the State is not required to prove actual physical possession of the controlled substance; proof of constructive possession is sufficient and such possession need not be exclusive. Constructive possession exists when a person, while not having actual possession of the controlled substance, has the intent and

> capability to maintain control and dominion over a con-
> trolled substance. Where a controlled substance is found
> on premises under the defendant's control, this fact alone
> may be sufficient to overcome a motion to dismiss and to
> take the case to the jury. If a defendant does not maintain
> control of the premises, however, other incriminating cir-
> cumstances must be established for constructive posses-
> sion to be inferred.

*State v. Neal*, 109 N.C. App. 684, 686, 428 S.E.2d 287, 289 (1993) (cita-
tions omitted). It is undisputed that Defendant did not maintain exclu-
sive control over the apartment. However, there was plenary evidence
that Defendant was using the apartment: a key to the apartment was on
Defendant's key ring; Defendant's clothing was found inside a plastic bag
in the bedroom of the apartment; and Defendant was observed entering,
and then exiting, the apartment shortly before the final drug transaction.
Finally, there was testimony that Defendant stated the apartment was
"where he was staying."

Although Defendant did not maintain exclusive control over the
apartment, and the degree of control that Defendant did maintain was
in dispute, other incriminating circumstances were present, support-
ing a finding that Defendant constructively possessed the heroin in the
apartment at the time of his arrest. Specifically, Defendant told officers
he had more heroin, and that it was in the apartment. Defendant gave
verbal consent to enter the apartment, which entry was accomplished
by the key on Defendant's key ring, voluntarily provided by Defendant.
Defendant, according to testimony, led officers directly to the heroin
in the kitchen. Defendant then "informed [Detective Temple] that the
roommate was not involved in the heroin trade, nor did he have any idea
of [Defendant's] involvement in the drug trade."

This evidence of Defendant's repeated statements that the heroin
recovered from the apartment belonged to him constitutes sufficient
"other incriminating circumstances . . . for constructive possession to be
inferred." *Neal*, 109 N.C. App. at 686, 428 S.E.2d at 289. Even assuming,
*arguendo*, that the admission of the contested testimony constituted error,
it does not rise to the level of plain error. This argument is without merit.

### III.

[2] In Defendant's first argument, he contends that the trial court erred
by denying his motion to dismiss the trafficking charge. We disagree.

Defendant specifically argues that the trial court erred in allowing the heroin recovered from Defendant's person to be combined with the heroin recovered from the apartment for the purposes of charging Defendant with trafficking. Although Defendant contends this alleged error constituted a violation of his right to due process, and thus argues for *de novo* review by this Court, the appropriate standard of review is that for denial of a motion to dismiss.

" 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citations omitted).

In *State v. Keys*, as in the case before us, the defendant "was charged and convicted, pursuant to N.C.G.S. § 90-95(h)(4)a, of trafficking in heroin by possession of more than four grams but less than fourteen grams. This crime has two elements: (1) knowing possession (either actual or constructive) of (2) a specified amount [more than 4 grams but less than 14 grams] of heroin." *State v. Keys*, 87 N.C. App. 349, 352, 361 S.E.2d 286, 288 (1987) (citations omitted).

Defendant cites to this Court's opinion in *State v. Rozier*, 69 N.C. App. 38, 316 S.E.2d 893 (1984), to support his fundamentally flawed statement of the law concerning when drugs recovered in separate locations may be combined for the purposes of supporting a trafficking charge. Defendant states in his brief:

> In order to combine drugs found in separate locations into one possession charge, the first burden for the State is to show both sets of drugs were possessed by [Defendant]. The state must then show a single continuing offense. The distinct acts of possession may not be separated in time or space. The drugs must be possessed for the same purpose.

Defendant immediately follows this incorrect assertion of the law with a cite to *Rozier*. In *Rozier*, the defendants are making the opposite argument — that the drugs found on their persons *should have been*

*combined* with the drugs they had previously sold, and that charging them separately constituted error. *Id.* at 54, 316 S.E.2d at 904. A vital portion of the *Rozier* analysis, not cited by Defendant in the present case, is as follows: "The circumstances of each case will determine whether separate offenses may properly be charged." *Id.* at 55, 316 S.E.2d at 904.

The circumstances in *Rozier* were quite different than those in the case before us. In *Rozier*,

> defendants had sold a large amount of cocaine, and shortly thereafter were found with traces of cocaine in vials for personal use. There was no evidence that defendants had filled their vials out of the larger amount, nor that they had done so and then used the cocaine. There was no evidence that defendants intended to sell the residual cocaine. The transfer of the large amount of cocaine was entirely complete when the subject vials were found. *Under these circumstances*, we hold that the trial court did not err in denying defendants' motions to quash and that they could properly be convicted of both offenses.

*Id.* (emphasis added).

None of these circumstances indicate universal requirements for deciding the validity of charging defendants for two separate crimes involving drug possession, much less universal requirements for charging defendants with only one crime involving drug possession when drugs are recovered from different locations. The circumstances listed in *Rozier* are just that — particular circumstances from a particular case that this Court held sufficient to support two separate charges related to drug possession in that case.

"In order for the State to obtain multiple convictions for possession of a controlled substance, the State must show distinct acts of possession separated in time and space." *State v. Moncree*, 188 N.C. App. 221, 231, 655 S.E.2d 464, 470 (2008) (citing *Rozier*, 69 N.C. App. at 38, 316 S.E.2d at 893). The converse does not inevitably follow. *Rozier* did not address the requirements for obtaining a single conviction for possession of a controlled substance recovered in different locations and at different times. However, what is clear is that if the State cannot show *distinct* acts of possession, separated in time, then multiple convictions for possession would be improper. *Moncree*, 188 N.C. App. at 232, 655 S.E.2d at 471 (because the defendant simultaneously possessed the marijuana in his shoe and the marijuana in his automobile, the "defendant

should have been charged with only the one count of felony possession of marijuana").

Defendant in the present case was observed entering the apartment immediately before his sale of 3.97 grams of heroin to Detective Lackey. Upon arrest, and after having been read his *Miranda* rights, Defendant volunteered that he had more heroin in the apartment, and provided the key and consent for the officers to enter the apartment where 0.97 grams of additional heroin were recovered. This additional heroin was packaged for sale in the same manner as the heroin actually sold to Detective Lackey. According to testimony, Defendant admitted to being a drug dealer. There was no evidence any of the heroin was for Defendant's personal use.

Defendant possessed the heroin in the apartment simultaneously with the heroin sold to Detective Lackey. Considering these circumstances, we hold there was no error in convicting Defendant on one charge of trafficking instead of two charges of possession. This Court, in an unpublished opinion, has reached the same result on facts nearly identical to those in the present case. *State v. Kornegay*, 153 N.C. App. 201, 569 S.E.2d 33, 2002 WL 31056751 (2002) (unpublished).

As the above argument was Defendant's sole justification for his motion to dismiss the trafficking charge, we hold that the trial court did not err in denying Defendant's motion to dismiss.

No error.

Chief Judge MARTIN and Judge CALABRIA concur.