DAVIS, Judge.
 

 The issue in this case is whether the trial court erred by allowing the State at the beginning of trial to amend the indictment charging the defendant with trafficking in heroin and instead charge him with trafficking in opiates. Stacy Allen Simmons ("Defendant") appeals from his convictions for possession of marijuana, possession of cocaine, trafficking in opiates by transportation, and trafficking in opiates by possession. Because we conclude that the State's actions constituted a substantial alteration of the indictment that is not permitted under our law, we vacate Defendant's convictions for trafficking
 
 *308
 
 in opiates by transportation and by possession.
 

 Factual and Procedural Background
 

 The State presented evidence at trial tending to establish the following facts: On 26 November 2014, Officer Adam Thompson, along with five other officers of the Charlotte-Mecklenburg Police Department, was patrolling the area of the Greenleafe Inn in Charlotte, North Carolina. The Greenleafe Inn was known to the officers as a "crime hotspot" where drug-related arrests had been made in the past.
 

 In the parking lot, Officer Thompson observed a man sitting in the passenger seat of a white utility van with its engine and lights turned off. He suspected the man may have been waiting to buy or sell drugs. Officer Thompson approached the van, and the occupant of the vehicle stated that his name was John Turner. After Officer Scottie Carson noticed a crossbow on the floor of the vehicle, Officer Thompson asked Turner to exit the van. As he did so, Turner wiped a white substance from his pants that Officer Thompson suspected was cocaine.
 

 The officers searched Turner and the vehicle and found a plastic wrapper containing heroin residue in his pocket. They also discovered inside the van 32 syringes, 0.5 grams of heroin, and a spoon containing heroin residue. Turner told the officers he was a heroin addict and was waiting on his dealer to arrive. He identified Defendant as his heroin dealer and said that Defendant would be driving either a black Lexus or a silver Kia minivan. Turner further informed the officers that they would find heroin in a "Hide-A-Key" box under the hood of Defendant's vehicle.
 

 Officer Thompson then waited with Turner in his motel room for Defendant to arrive. Eventually, a silver Kia minivan drove into the parking lot and parked across from Turner's room. Defendant exited the vehicle with a young child in his arms and approached Turner's room. Officer Thompson opened the door as Defendant prepared to knock, and Defendant immediately turned and began walking away. Officer Thompson ordered him to stop, and Defendant complied. Officer Thompson proceeded to search Defendant but did not find any contraband. Officers Thompson and Carson then asked Defendant if there was any heroin concealed on the child. After an initial denial, Defendant admitted having placed a packet of heroin in the child's pants.
 

 Defendant was arrested, and Officers Todd Zielinski and Jonathan Brito conducted a search of the Kia. On the passenger side of the vehicle, they found two digital scales, a partially smoked marijuana "blunt," and $800 in cash. Under the hood was a black "Hide-A-Key" box containing "balloons" of heroin as well as a pill bottle containing marijuana, crack cocaine, and 17 hydrocodone pills. The officers also found a revolver wrapped in a sock under the hood. Testing conducted by a forensic chemist revealed that the hydrocodone weighed 4.62 grams, the heroin recovered from the child's pants weighed 0.84 grams, and the heroin found under the hood of the Kia weighed 3.77 grams.
 

 On 8 December 2014, Defendant was indicted by a grand jury on charges of misdemeanor child abuse, possession of a firearm by a felon, possession of marijuana, possession with intent to sell or deliver ("PWISD") cocaine, PWISD heroin, trafficking in heroin by transportation, trafficking in heroin by possession, possession of drug paraphernalia, maintaining a vehicle or dwelling for the purpose of using controlled substances, and possession of a Schedule III controlled substance. On 5 July 2016, a hearing was held before the Honorable Robert C. Ervin in Mecklenburg County Superior Court to address various pre-trial matters. At the hearing, the State announced that it was dismissing five of the charges. As a result, the charges remaining against Defendant were possession of a firearm by a felon, possession of marijuana, PWISD cocaine, trafficking in heroin by transportation, and trafficking in heroin by possession.
 

 At that point in the proceedings, Defendant's counsel informed the court that Defendant "intend[ed] to admit to the heroin that was found in the pants leg of the daughter." The prosecutor then stated the following:
 

 [PROSECUTOR]: Your Honor, I did have one thing, and I apologize that I
 
 *309
 
 didn't mention it yet. Quite frankly, I wasn't anticipating doing this, but based on what I've been hearing from the defense, I think it's appropriate. The state would move to amend the trafficking indictments. They right now read possession of heroin. I think the more appropriate word should be opiate or opiates.... Defendant has been on notice that in addition to heroin that was seized from the vehicle, there was also hydrocodone that was seized from the vehicle, as he was charged with that. That is one of the charges that's been dismissed this morning but doesn't change the nature of the offense. Defendant has a lab result that includes the hydrocodone, includes the different bags of heroin that were weighed. They all are the same exact, or treated exactly the same under the law, and so we'd be moving to amend the indictments just to change the word heroin to opiates[.]
 

 Defendant objected to the State's motion to amend the indictment. However, the trial court granted the State's motion and allowed the amendment.
 

 Defendant's trial began that same morning. On 11 July 2016, the jury convicted Defendant of possession of marijuana, possession of cocaine, trafficking in opiates by transportation, and trafficking in opiates by possession. Defendant was found not guilty of possession of a firearm by a felon.
 

 The trial court consolidated the trafficking convictions and sentenced Defendant to 70 to 93 months imprisonment. The trial court also consolidated his convictions for possession of marijuana and cocaine and sentenced him to a term of 8 to 19 months imprisonment to be served consecutively to the trafficking sentence. The court then suspended the sentence for the possession convictions, and Defendant was placed on 36 months of supervised probation. Defendant gave oral notice of appeal.
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred by permitting the State to amend his drug trafficking indictment by changing the substance referenced therein from "heroin" to "opiates[.]" He contends that the effect of the amendment was to substantially alter the trafficking charges in violation of N.C. Gen. Stat. § 15A-923.
 

 The statute proscribing trafficking in opiates provides, in pertinent part, as follows:
 

 Any person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate ... including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as 'trafficking in opium or heroin' and if the quantity of such controlled substance or mixture involved:
 

 a. Is four grams or more, but less than 14 grams, such person shall be punished as a class F felon ....
 

 N.C. Gen. Stat. § 90-95
 
 (h)(4) (2015).
 

 While heroin is specifically mentioned in the statutory language, hydrocodone is also a covered substance under
 
 N.C. Gen. Stat. § 90-95
 
 (h)(4) as an opium derivative.
 
 State v. Johnson
 
 ,
 
 214 N.C. App. 436
 
 , 441,
 
 714 S.E.2d 502
 
 , 506,
 
 disc. review denied
 
 ,
 
 365 N.C. 362
 
 ,
 
 718 S.E.2d 393
 
 (2011). All opiates in a person's possession may be aggregated to reach the statutory weight threshold of four grams.
 
 See
 

 State v. Hazel
 
 ,
 
 226 N.C. App. 336
 
 , 347,
 
 739 S.E.2d 196
 
 , 202-03 (holding that heroin found on defendant's person could be combined with heroin found in defendant's apartment to support trafficking conviction under
 
 N.C. Gen. Stat. § 90-95
 
 (h)(4) ),
 
 appeal dismissed and disc. review denied
 
 ,
 
 367 N.C. 219
 
 ,
 
 747 S.E.2d 582
 
 (2013).
 

 It is well established that "[a] felony conviction must be supported by a valid indictment which sets forth each essential element of the crime charged."
 
 State v. LePage
 
 ,
 
 204 N.C. App. 37
 
 , 49,
 
 693 S.E.2d 157
 
 , 165 (2010) (citation omitted). An indictment that "fails to state some essential and necessary element of the offense" is fatally defective.
 
 State v. Wilson
 
 ,
 
 128 N.C. App. 688
 
 , 691,
 
 497 S.E.2d 416
 
 , 419 (citation and quotation marks omitted),
 
 disc. review improvidently allowed
 
 ,
 
 349 N.C. 289
 
 ,
 
 507 S.E.2d 38
 
 (1998). Where an indictment is fatally defective, the superior court lacks subject matter jurisdiction over the case.
 

 *310
 

 State v. Justice
 
 ,
 
 219 N.C. App. 642
 
 , 643,
 
 723 S.E.2d 798
 
 , 800 (2012) (citation omitted).
 

 We review the trial court's granting of a motion to amend an indictment
 
 de novo
 
 .
 
 State v. Avent
 
 ,
 
 222 N.C. App. 147
 
 , 148,
 
 729 S.E.2d 708
 
 , 710 (citation omitted),
 
 writ of supersedeas denied and disc. review denied
 
 ,
 
 366 N.C. 411
 
 ,
 
 736 S.E.2d 176
 
 (2012). N.C. Gen. Stat. § 15A-923 provides that "[a] bill of indictment may not be amended." N.C. Gen. Stat. § 15A-923(e) (2015). "Our Supreme Court has interpreted the term 'amendment' under N.C.G.S. § 15A-923(e) to mean any change in the indictment which would substantially alter the charge set forth in the indictment."
 
 State v. De la Sancha Cobos
 
 ,
 
 211 N.C. App. 536
 
 , 541,
 
 711 S.E.2d 464
 
 , 468 (2011) (citation and quotation marks omitted). In determining whether an amendment amounts to a substantial alteration, courts "must consider the multiple purposes served by indictments."
 
 State v. Silas
 
 ,
 
 360 N.C. 377
 
 , 380,
 
 627 S.E.2d 604
 
 , 606 (2006) (citation omitted). These purposes are as follows:
 

 (1) to provide certainty so as to identify the offense, (2) to protect the accused from twice being put in jeopardy for the same offense, (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of guilty or
 
 nolo contendere
 
 , to pronounce sentence according to the rights of the case.
 

 State v. Foster
 
 ,
 
 10 N.C. App. 141
 
 , 142-43,
 
 177 S.E.2d 756
 
 , 757 (1970) (citation omitted).
 

 In
 
 Silas
 
 , our Supreme Court held that where an indictment alleges one theory of an offense, the State may not later amend the indictment to allege a different theory.
 
 Silas
 
 ,
 
 360 N.C. at 382
 
 ,
 
 627 S.E.2d at 607
 
 . In
 
 Silas
 
 , the defendant was initially indicted for felonious breaking and entering with the intent to commit murder.
 
 Id.
 
 at 379,
 
 627 S.E.2d at 606
 
 . After the close of all the evidence, the indictment was amended to change the felony the defendant allegedly intended to commit from murder to assault with a deadly weapon.
 

 Id.
 

 The Court held that the amendment was impermissible because "the indictment served as notice to defendant apprising him of the State's theory of the offense."
 
 Id.
 
 at 382,
 
 627 S.E.2d at 608
 
 . As a result, "[t]he subsequent alteration prejudiced defendant as he relied upon the allegations in the original indictment to his detriment in preparing his case upon the assumption the prosecution would proceed upon a theory the defendant intended to commit murder."
 

 Id.
 

 Similarly, in
 
 State v. Frazier
 
 , --- N.C. App. ----,
 
 795 S.E.2d 654
 
 ,
 
 disc. review denied
 
 , --- N.C. ----,
 
 799 S.E.2d 51
 
 (2017), this Court held that an amendment to an indictment that allowed the jury to convict the defendant of negligent child abuse under a theory not alleged in the original indictment was impermissible.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 656-57
 
 . The initial indictment alleged that the defendant committed child abuse by negligently failing to treat her child's chest and facial wounds.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 656
 
 . During trial, however, the State was permitted to amend the child abuse indictment to allege that the defendant failed to provide a safe environment for her child.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 656
 
 . We held that "[u]nder this new theory, the jury could convict based on a finding that Defendant's failure to provide a safe living environment was the cause of her child's wounds in the first instance, irrespective of whether she attempted to treat the wounds after they had been inflicted."
 

 Id.
 

 at ----,
 
 795 S.E.2d at 656-57
 
 . Thus, we concluded that the amendment in
 
 Frazier
 
 constituted a substantial alteration of the indictment.
 

 Id.
 

 at ----,
 
 795 S.E.2d at 656
 
 .
 

 In the present case, Defendant argues that broadening the scope of his indictment to include additional substances by changing "heroin" to "opiates" was a substantial alteration and thus an impermissible amendment of the indictment. We agree.
 

 It is well established that "amending an indictment by adding an essential element is substantially altering the indictment."
 
 De la Sancha Cobos
 
 ,
 
 211 N.C. App. at 541
 
 ,
 
 711 S.E.2d at 468
 
 (quotation marks and brackets omitted). This Court has held that "the identity of the controlled substance that defendant allegedly possessed is considered to be an essential element which must be alleged properly in the indictment."
 
 State v. Stith
 
 , --- N.C. App. ----, ----,
 
 787 S.E.2d 40
 
 , 44 (2016) (citation and quotation marks omitted),
 
 *311
 

 aff'd per curiam
 
 ,
 
 369 N.C. 516
 
 ,
 
 796 S.E.2d 784
 
 (2017).
 

 In
 
 State v. Ledwell
 
 ,
 
 171 N.C. App. 328
 
 ,
 
 614 S.E.2d 412
 
 ,
 
 disc. review denied
 
 ,
 
 360 N.C. 73
 
 ,
 
 622 S.E.2d 624
 
 (2005), we held that an indictment alleging possession of methylenedioxyamphetamine was facially invalid for failing to allege a substance listed under Schedule I of the North Carolina Controlled Substances Act.
 
 Id.
 
 at 333,
 
 614 S.E.2d at 415
 
 . We ruled that while "3, 4-methylenedioxyamphetamine" was a substance listed under Schedule I, the absence of the correct numerical prefix in the indictment rendered it fatally flawed.
 
 Id.
 
 at 332-33,
 
 614 S.E.2d at 414-15
 
 (citation omitted). This Court explained that "we cannot regard this defect as a mere technicality, for the chemical and legal definition of these substances is itself technical and requires precision."
 
 Id.
 
 at 332,
 
 614 S.E.2d at 415
 
 (citation omitted);
 
 see also
 

 State v. Ahmadi-Turshizi
 
 ,
 
 175 N.C. App. 783
 
 , 785-86,
 
 625 S.E.2d 604
 
 , 605-06 (noting "Schedule I of the North Carolina Controlled Substances Act ... identifies a long list of controlled substances by their specific chemical names" and holding that indictment alleging possession, sale, and delivery of methylenedioxymethamphetamine was defective for "fail[ing] to include '3, 4' [prefix] as required"),
 
 writ of supersedeas denied and disc. review denied
 
 ,
 
 360 N.C. 484
 
 ,
 
 631 S.E.2d 133
 
 (2006).
 

 Similarly, in
 
 LePage
 
 , we held that an indictment charging the defendant with contaminating food or drink with a controlled substance was fatally defective because it identified the alleged controlled substance as "benzodiazepines" rather than "Clonazepam."
 
 204 N.C. App. at 54
 
 ,
 
 693 S.E.2d at 168
 
 . In explaining the importance of the distinction, we stated as follows:
 

 The term 'benzodiazepine' describes a class of drug which encompasses a number of individual drugs. There is not a drug called simply 'benzodiazepine;' rather, there exist several drugs, including Clonazepam... all of which fall within the class of benzodiazepines. ... In essence, Clonazepam is a benzodiazepine. However, not all benzodiazepines are Clonazepam.
 

 Id.
 
 at 52-53,
 
 693 S.E.2d at 167
 
 . Thus, in assessing the validity of an indictment, the distinction between a specific controlled substance and the category of controlled substances to which it belongs is a critical one.
 

 In
 
 State v. Williams
 
 ,
 
 242 N.C. App. 361
 
 ,
 
 774 S.E.2d 880
 
 (2015), this Court held that where an indictment for possession with intent to manufacture, sell, or deliver a Schedule I substance failed to allege possession of a substance classified under Schedule I, the indictment could not be amended to properly allege possession of a Schedule I substance.
 

 Id.
 

 at 368
 
 ,
 
 774 S.E.2d at 885
 
 . In that case, the original indictment alleged that the defendant possessed methylethcathinone.
 

 Id.
 

 at 363-64
 
 ,
 
 774 S.E.2d at 883
 
 . We noted that, although methylethcathinone was not a Schedule I substance, 4-methylethcathinone was, in fact, listed under Schedule I and the indictment was amended prior to trial to add the prefix "4-" to the substance named therein.
 

 Id.
 

 We held that because "the amendment effectively added an essential element that was previously absent, it constituted a substantial alteration and, as a result, was legally impermissible."
 

 Id.
 

 at 368
 
 ,
 
 774 S.E.2d at 885-86
 
 (citation omitted).
 

 Here, the State broadened the scope of Defendant's original indictment to allege that he had trafficked in "opiates," a category of controlled substances, rather than "heroin," a specific controlled substance. It did so for the purpose of bringing an additional controlled substance-hydrocodone-within the ambit of the indictment. Although heroin is an opiate, not all opiates are heroin. Therefore, when the original indictment was amended to include hydrocodone, a new substance was effectively alleged in the indictment.
 
 See
 

 Ahmadi-Turshizi
 
 ,
 
 175 N.C. App. at 784-85
 
 ,
 
 625 S.E.2d at 605
 
 ("[T]he identity of the controlled substance that defendant allegedly possessed is ... an essential element which must be alleged properly in the indictment." (citation omitted)).
 

 Our holding is consistent with the proposition that a critical purpose served by the indictment requirement is to "enable the accused to prepare for trial."
 
 Foster
 
 ,
 
 10 N.C. App. at 142
 
 ,
 
 177 S.E.2d at 757
 
 (citation omitted). In this case, the State moved to amend the indictment on the morning of trial. Until then, Defendant had justifiably relied upon
 
 *312
 
 the original indictment in preparing his defense. This concern was expressed by Defendant's attorney in his objection to the State's motion to amend the indictment:
 

 [DEFENDANT'S COUNSEL]: Well, your Honor, it's been our understanding all along that the heroin charge-the trafficking in heroin-had to do specifically with the 3.7 as well as the .84 grams that was seized. The hydrocodone was charged separately, and we had no knowledge that this would be included in-or the state would try to include this in the trafficking amount. At this point this is the first I'm hearing of this.
 

 Notably, the State sought to amend the indictment only after Defendant informed the trial court of his intention to admit to possessing some, but not all, of the heroin that was found by the officers during the 26 November 2014 incident. The logical inference from this sequence of events is that upon learning of Defendant's trial strategy on the morning of trial, the State sought to thwart that strategy by broadening the scope of the indictment. In essence, the State was permitted to change the rules of the game just as the players were taking the field.
 

 The State argues that because the amendment to the indictment at issue here occurred before trial, Defendant was not prejudiced in his ability to prepare a defense. We rejected a similar argument in
 
 De la Sancha Cobos
 
 . There, the indictment alleging conspiracy to traffic in cocaine was amended "[a]t the beginning of the trial before the jury was empaneled" to specify the amount of cocaine.
 
 De la Sancha Cobos
 
 ,
 
 211 N.C. App. at 538
 
 ,
 
 711 S.E.2d at 466
 
 . In that case, this Court ruled that "[b]ecause we have previously held that the weight of cocaine is an essential element of the offense of conspiracy to traffic in cocaine, we conclude that amending an indictment by adding an essential element is substantially altering the indictment."
 

 Id.
 

 at 541
 
 ,
 
 711 S.E.2d at 468
 
 (quotation marks and brackets omitted). Thus, the fact that the amendment here occurred before trial had actually begun does not change our determination that the amendment was impermissible.
 

 Therefore, the trial court erred in allowing the State to amend Defendant's indictment. Accordingly, the convictions at issue must be vacated.
 

 Conclusion
 

 For the reasons stated above, we vacate Defendant's convictions for trafficking in opiates by transportation and trafficking in opiates by possession and remand for resentencing.
 

 VACATED IN PART AND REMANDED.
 

 Judges BRYANT and INMAN concur.